UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**
#105 &106

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):    The Court GRANTS the motion for final approval and GRANTS the motion for attorneys' fees, costs, and class representative service awards.**

    Before the Court are two motions filed by Plaintiffs Eric Ayala ("Ayala") and Adrian Aviles ("Aviles") (collectively, "Plaintiffs"): (1) a motion for final approval of class action settlement, *see generally* Dkt. # 106-1 ("*Final Approval Mot.*"); and (2) a motion for attorneys' fees, costs, and class representative service awards, *see generally* Dkt. # 105-1 ("*Fees Mot.*").[1] Defendant UPS Supply Chain Solutions, Inc. ("Defendant") does not oppose either motion. The Court conducted a fairness hearing on January 14, 2022. Having considered the moving papers and the information provided at the hearing, the Court **GRANTS** the motion for final approval and **GRANTS** the motion for attorneys' fees, costs, and class representative service awards.

I.    Background

    After two separately filed class actions were removed and consolidated, Plaintiffs filed a consolidated class action complaint on May 1, 2020. *See generally* Dkt. # 41. Plaintiffs alleged various violations of the California Labor Code for: (1) failure to provide rest breaks and meal periods; (2) failure to pay all wages earned at the correct rates; (3) failure to indemnify; (4) failure to provide accurate wage statements; and (5) waiting time penalties. *See generally id.* Plaintiffs also brought a cause of action under the California Business and Professions Code for

---

[1] The Court cites Plaintiffs' memoranda in support of their motions because they contain Plaintiffs' substantive arguments. Plaintiffs' final approval motion itself is Docket Entry # 106 and Plaintiffs' motion for attorneys' fees, costs, and class representative service awards is Docket Entry # 105.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

unfair competition and sought civil penalties under California's Private Attorneys General Act ("PAGA"). *See generally id.* Defendant answered on May 22. *See generally* Dkt. # 46.

The parties then conducted significant discovery, including inspection of hundreds of pages of documents, extensive data collection and analysis, hiring three expert witnesses to analyze potential class-wide damages, analysis of the merits and defenses, and conducting 11 depositions. *Declaration of Kyle Nordrehaug in Support of Motion for Preliminary Approval*, Dkt. # 100-2 ("*Nordrehaug Prelim. Decl.*"), ¶¶ 15–16; *Declaration of David Spivak in Support of Motion for Preliminary Approval*, Dkt. # 100-3 ("*Spivak Prelim. Decl.*"), ¶ 10; *see also* Dkts. # 48, 51.

On January 4, 2021, the parties engaged in a full-day mediation session before mediator Lisa Klerman but were unable to reach an agreement. *Nordrehaug Prelim. Decl.* ¶ 17; *see also* Dkt. # 53. Plaintiffs then filed, and Defendant opposed, a motion to certify the class. *See generally* Dkts. # 56, 73. While the certification motion was pending, the parties engaged in a second mediation session before mediator Lou Marlin and principally settled the matter through Mr. Marlin's proposal. *Nordrehaug Prelim. Decl.* ¶ 17. The parties then spent several months negotiating the terms of the settlement, which were finalized in a Settlement Agreement ("Settlement") now before the Court. *See Declaration of David Spivak in Support of Motion for Final Approval*, Dkt. # 106-2 ("*Spivak Final Decl.*"), ¶ 8; *Declaration of David Spivak in Support of Motion for Award of Attorneys' Fees*, Dkt. # 105-2 ("*Spivak Fees Decl.*"), ¶ 11; *see generally Joint Stipulation of Class Action Settlement*, Dkt. # 106-2, Ex. A ("*Settlement*").

Plaintiffs sought preliminary approval of the Settlement, *see generally* Dkt. # 100 ("*Prelim. Approval Mot.*"), which the Court granted, *see generally* Dkt. # 102 ("*Prelim. Order*"). Specifically, the Court (1) certified the Class for settlement purposes; (2) preliminary approved the Settlement Agreement; (3) appointed Blumenthal Nordrehaug Bhomik De Blouw LLP and The Spivak Law Firm as Class Counsel; (4) appointed Plaintiffs as Class Representatives; (5) appointed Phoenix Settlement Administrators ("Phoenix") as the Settlement Administrator; and (6) approved the proposed plan to give Class Notice. *Id.* at 6, 16–17. The Court also ordered Plaintiffs to file additional memoranda to supplement the motion for final approval in order to: (1) justify the requested departure from the 25% benchmark under the *Vizcaino* factors; (2) provide the requested hourly rates and hours expended in this case along with a detailed summary of costs and expenses; and (3) justify Plaintiffs' requested enhancement awards. *Id.* at 17.

On October 8, 2021, Phoenix mailed Class Notice to all 2,100 Class Members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

*Declaration of Kevin Lee*, Dkt. # 105-6 ("*Lee Decl.*"), ¶ 5. Ultimately, Phoenix was unable to deliver only five Class Notices. *Supplemental Declaration of Kevin Lee*, Dkt. # 106-2, Ex. F ("*Lee Supp. Decl.*"), ¶ 4. The deadline for Class Members to submit a request for exclusion, objection, or dispute was November 22, 2021. *Lee Decl.* ¶¶ 8–9 & Ex. A at 6. Phoenix did not receive any requests for exclusion, objections, or disputes. *Lee Supp. Decl.* ¶¶ 5–7.

Plaintiffs now move for an order: (1) granting final approval of the Settlement Agreement; (2) approving the PAGA penalties; (3) approving the requested attorneys' fees, costs, and enhancement awards; and (4) entering final judgment in accordance with the terms of the Settlement. *See Final Approval Mot.* 1:15–2:1; *Fees Mot.* 1:3–10.[2]

II.      Final Approval of the Settlement Agreement

A.      Overview of the Settlement Agreement

The settlement class (the "Class" or "Class Members") is defined as: "All individuals who are or previously were employed by Defendant in California as non-exempt employees during the Class Period." *Settlement* ¶ 1(A). The Settlement divides the class into two separate periods: (1) the "Class Period," which is between December 12, 2015 and August 1, 2021; and (2) the "PAGA Settlement Period," which is between December 12, 2018 and August 1, 2021. *Id.* ¶ 1(B). Class Members who were employed during the PAGA Settlement Period are "PAGA Settlement Class Members." *Id.* ¶ 1(C).

Under the Settlement, Defendant agreed to pay the Class $1,800,000.00 (the "Gross Settlement Amount"), inclusive of interest, settlement administration costs, payroll taxes, class representative service awards of up to $20,000 per Plaintiff, attorneys' fees of up to one-third of the Gross Settlement Amount, costs incurred by Class Counsel, and $40,000 in PAGA civil penalties. *Id.* ¶ 4. The remainder of the Gross Settlement Amount after these deductions (the "Net Settlement Amount") shall be paid to Class Members as their Individual Settlement Award. *Id.* ¶ 5(A)–(B). There is no reversion of any portion of the Gross Settlement Amount to

---

[2] In addition, Plaintiffs ask the Court to confirm the certification of the Class for settlement purposes, confirm the appointment of Class Counsel, and confirm the appointment of Plaintiffs as Class Representatives. *See Final Approval Mot.* 1:15–2:1. However, because the Court has already certified the Class for settlement purposes, appointed Class Counsel, and appointed Plaintiffs as Class Representatives, *see Prelim. Order* at 3–6, the Court need not reconfirm the certification and appointments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

Defendant.  *See id.* ¶ 5(G).

Each Class Member who has not opted out will be entitled to a pro rata portion of the Net Settlement Amount based on the number of workweeks employed during the Class Period as a fraction of the total workweeks worked by all Class Members.  *Id.* ¶ 5(B).  The average pre-tax Individual Settlement Award will be approximately $442.08 and the highest will be approximately $1,692.33.  *See Lee Decl.* ¶ 13.

Phoenix will mail Individual Settlement Award checks to Class Members, who must cash their checks within 180 calendar days from the date of mailing.  *Id.* ¶ 5(G).  Phoenix will also send a reminder to any Class Members who have not cashed their checks within 120 days of issuance.  *Id.*  Any settlement checks not claimed within 180 days after distribution shall escheat to the State of California Controller's Office to be held in the name of the Class Member who is the payee of the check.  *Id.* ¶ 5(G).

Phoenix will distribute 75% of the PAGA civil penalties ($30,000) to the California Labor and Workforce Development Agency ("LWDA").  *See id.* ¶¶ 4(C)(6), 5(C).  The PAGA Settlement Class Members will receive a pro rata share of the remaining 25% ($10,000) based on the number of workweeks employed during the PAGA Class Period as a fraction of the total workweeks worked by all PAGA Settlement Class Members.  *Id.*  As with the greater Settlement Class, checks must be cashed within 180 days of issuance, Phoenix will send a reminder, and any checks not claimed within 180 days will escheat to the State of California Controller's Office to be held in the name of the PAGA Class Member who is the payee of the check.  *See id.* ¶ 5(G).

Defendant has also agreed to implement a key policy change—paying its non-exempt hourly employees for time spent undergoing security checkpoints at its California facilities.  *See id.* ¶ 2.  To help implement this policy change, Defendant will install time capturing systems at its security checkpoints.  *Id.*  Plaintiffs note that these measures "fairly and adequately address the primary concerns that caused them to bring the Lawsuit" and have agreed not to sue Defendant regarding this practice so long as these remedial measures remain in place.  *Id.*

In return, Class Members who have not opted out will release Defendant, as well as its enumerated agents and shareholders, from all the following claims pleaded in the Consolidated Class Action Complaint arising between December 12, 2015 and September 1, 2021:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

> (a) failure to provide meal and rest periods; (b) failure to indemnify expenses; (c) failure to pay all wages at the correct rates of pay; (d) failure to provide proper wage statements; (e) waiting time penalties; and (f) all claims for unfair business practices that could have been premised on the facts, claims, causes of action or legal theories described above.

*Id.* ¶ 3(A).

The PAGA Settlement Class Members will release all claims under PAGA alleged in the "Consolidated Class Action Complaint and/or any notice submitted by Plaintiffs to the LWDA, to the extent that such claims were or could have been pled or could arise out of the facts pled" between December 15, 2018 and September 1, 2021, including:

> (a) failure to provide meal and rest periods; (b) failure to indemnify expenses; (c) failure to pay all wages at the correct rates of pay; (d) failure to provide proper wage statements; and (e) waiting time penalties.

*Id.* ¶ 3(B).

Finally, Plaintiffs individually (1) agree that they will release Defendant and its enumerated agents and shareholders from "all claims, whether known or unknown, under federal, state or local law . . . , including but not limited to all claims related to or arising out of their employment with Defendant and the termination thereof"; and (2) waive "all rights and benefits afforded by Section 1542 of the California Civil Code." *Id.* ¶ 3(C).

B.   <u>Legal Standard</u>

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

In determining whether a settlement is fair, reasonable, and adequate, the court must:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|----------|------------------------|------|------------------|

| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. |
|-------|--------------------------------------------------------|

balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Id.*; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list"). Additionally, under Rule 23(e), the Court must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

The district court must approve or reject the settlement—as a whole—after comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* A court should be cognizant that a settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

C.   <u>*Hanlon* Factors</u>

i.   *Strength of Plaintiffs' Case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (internal quotation marks omitted). This factor generally weighs in favor of approval when plaintiffs must overcome barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

Here, Plaintiffs assert that the Class faced significant risks and uncertainties. *Spivak Final Decl.* ¶ 8; *Spivak Fees Decl.* ¶¶ 11, 23(i). Specifically, Plaintiffs point to this Court's order denying class certification in *Coates v. United Parcel Service, Inc.*, No. CV 18-3012 PSG (AFMx), 2019 WL 8884492, at *7–8 (C.D. Cal. July 2, 2019), a case involving similar claims and substantially the same facts. *Spivak Fees Decl.* ¶ 11. Defendant also raised numerous defenses to their waiting time, indemnification, and meal and rest period violation claims. *See Prelim. Approval Mot.* 12:15–13:13; *Nordrehaug Prelim. Decl.* ¶ 21. Further, Plaintiffs would have to overcome Defendant's arguments in opposition to class certification, including that individual issues predominated. *Nordrehaug Prelim. Decl.* ¶ 22. Finally, Plaintiffs previously noted that the PAGA penalties they sought could "potentially have zero value" to the extent they were based on Plaintiffs' meal and rest break claims. *Prelim. Approval Mot.* 11:18–21.

Accordingly, Plaintiffs' case may have been relatively weak given the significant obstacles they faced at the certification stage and beyond. Thus, this factor weighs in favor of final approval.

### ii.    *Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Justice*, 688 F.2d at 625. Here, Plaintiffs argue that, without a settlement, they would need to endure expensive and protracted litigation. *Final Approval Mot.* 8:17–21. Plaintiffs explain that the risks described above presented serious obstacles to obtaining and maintaining class certification and defeating summary judgment. *Spivak Fees Decl.* ¶ 11. And even upon surmounting such obstacles, Plaintiffs would face a prolonged and costly trial and the potential for a lengthy appeal. *See id.* Accordingly, because the Settlement eliminates the delay, costs, and uncertainty of further litigation, this factor supports final approval. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 331 (N.D. Cal. 2014) ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing.").

### iii.    *Risk of Maintaining Class Action Status Through Trial*

Plaintiffs assert that Defendant "forcefully opposed the propriety of class certification," including during mediation, which presented significant risks to Plaintiffs' ability to obtain and maintain class certification through trial. *Nordrehaug Prelim. Decl.* ¶ 22. In its opposition to Plaintiffs' motion for class certification, Defendant argued that Plaintiffs could not establish either commonality or predominance on any of their claims, in part due to lack of classwide proof. *See generally* Dkt. # 73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

Because Defendant had valid bases for continuing to contest class certification through trial if litigation proceeded, this factor favors final approval.

### iv.    Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotations omitted). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators." *Id.* at 625. Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

Here, the parties agreed to settle all claims for a Gross Settlement Amount of $1,800,000. *See Settlement* ¶ 4. The Gross Settlement Amount equals roughly 7.8% of Plaintiffs' estimation of Defendant's maximum damages exposure and roughly 5.9% of the estimated maximum total recovery including PAGA penalties. *See Prelim. Approval Mot.* 11:13–22. This percentage is well within the range of possible approval. *See Turner v. Motel 6 Operating L.P.*, No. CV 17-2544 PSG (SSX), 2018 WL 6977474, at *3 (C.D. Cal. Nov. 6, 2018) (approving a wage-and-hour class action settlement where gross settlement amount was 6.8% of plaintiff's estimation of defendant's total maximum liability); *Khaled v. Library Sys. & Servs., LLC*, No. CV 19-1478 PSG (KKx), 2021 WL 2366952, at *6 (C.D. Cal. May 14, 2021) (approving settlement where gross settlement amount was 4.6% of plaintiff's estimation of defendant's total maximum liability).

Further, the parties reached this amount after engaging in substantial litigation and two adversarial and arm's-length mediations. *See Spivak Final Decl.* ¶ 8; *Spivak Fees Decl.* ¶ 11. The Court considered Plaintiffs' uncontested opinion regarding the value and merits of this case during the preliminary approval stage. *See Prelim. Order* at 11–12. Given Plaintiffs' concession that their estimate of Defendant's maximum exposure did not account for any of the risks they faced, the Court found this estimate was "likely unreliable." *Id.* at 11. Further, the Court noted that Plaintiffs faced the potential for little to no recovery of PAGA penalties. *Id.* The Court continues to find that the Gross Settlement Amount is appropriate in light of the challenges described above.

In sum, weighing the clear risks of ongoing litigation against the substantial recovery the Settlement provides for the Class, the amount offered in settlement is reasonable. *See Aarons v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

*BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor). Accordingly, this factor favors final approval.

*v.    Extent of Discovery Completed and State of the Proceedings*

This factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases," and the more heavily this factor weighs in favor of final approval. *Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

Here, the parties actively litigated this case and completed significant formal and informal discovery. *See Spivak Fees Decl.* ¶ 11. The parties exchanged and inspected extensive documentation and information, hired three experts to assess potential class-wide damages, conducted 11 depositions, and analyzed the merits and value of the claims. *Nordrehaug Prelim. Decl.* ¶¶ 15–16; *Spivak Prelim. Decl.* ¶¶ 10, 22. Class Counsel also interviewed class members and reviewed Defendant's relevant policies, time-keeping records, and payroll data. *Spivak Fees Decl.* ¶ 11; *Nordrehaug Prelim. Decl.* ¶¶ 15–16; *Spivak Prelim. Decl.* ¶ 10. Plaintiffs then filed, and Defendant opposed, a motion for class certification. *See generally* Dkts. # 56, 73. The parties engaged in two separate arm's-length mediations, principally settled the matter, and further negotiated the terms of the Settlement Agreement. *See Spivak Final Decl.* ¶ 8; *Spivak Fees Decl.* ¶ 11; *Nordrehaug Prelim. Decl.* ¶ 17. This suggests that the parties had a clear view of the merits of their positions in the case when negotiating the Settlement Agreement.

The Court is confident that Plaintiffs had enough information to make an informed decision about the Settlement based on the strengths and weaknesses of the case. *See Johnson v. MetLife, Inc.*, No. SACV 13-128-JLS (RNBx), 2015 WL 1364553, at *6–7 (C.D. Cal. Mar. 19, 2018) (reasoning that informal discovery prior to settling supports approving class action settlement). As such, this factor weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

vi.     *Experience and Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Class Counsel has considerable experience handling wage-and-hour and class action cases. *See Spivak Fees Decl.* ¶¶ 6–9; *Declaration of Kyle Nordrehaug in Support of Motion for Award of Attorneys' Fees*, Dkt. # 105-5 ("*Nordrehaug Fees Decl.*"), ¶ 3 & Ex. 1. The Court is satisfied that this experience has allowed Class Counsel to evaluate the merits of the claims and risks associated with prosecuting them through trial and appeal. The Court accordingly credits Class Counsel's determination that the settlement is fair and reasonable and finds that this factor weighs slightly in favor of final approval.

vii.     *Presence of a Government Participant*

Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

viii.     *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Here, Class Notices were sent to all 2,100 Class Members and only five were undeliverable. *Lee Decl.* ¶ 5; *Lee Supp. Decl.* ¶ 4. Not a single Class Member objected to the Settlement or opted out. *Lee Supp. Decl.* ¶¶ 5–6; *Final Approval Mot.* 9:13–17. The Court finds that this positive reaction weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

ix.     *Balancing the* Hanlon *Factors*

Having considered each of the *Hanlon* factors, the Court finds that all relevant factors favor final approval.

D.     *Briseño* Factors

In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel has pursued their own self-interests in the negotiations. *See* 998 F.3d at 1023. The court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if there is a "clear sailing arrangement"; and (iii) if any of the gross settlement amount reverts to the defendant. *See id.* The Court discusses each "red flag" in turn.

i.     *Disproportionate Distribution of the Settlement*

One sign that class counsel has pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the gross settlement fund. *See Briseño*, 998 F.3d at 1023. For example, in *Briseño*, the court found that class counsel's receipt of $5.85 million of the $8 million gross settlement fund raised red flags, particularly because the class received less than $1 million. *See id.* at 1020.

Here, Class Counsel seeks $600,000, or 33% of the Gross Settlement Amount. *Fees Mot.* 4:6–10. The Class is expected to receive approximately $928,371.60—more than 50% of the Gross Settlement Amount. *See Lee Decl.* ¶ 12. Thus, Class Counsel seek a much lower percentage of the Gross Settlement Amount than the roughly 73% class counsel received in *Briseño* and Class Members will receive a much greater percentage than the roughly 13% received in *Briseño*. *See* 998 F.3d at 1020. Although the distribution Class Counsel seeks is higher than the 25% benchmark in class action settlements, after examining the requested fees, as discussed further below, the Court is not concerned about collusion based on Class Counsel's fee request. Accordingly, because Class Counsel did not receive a disproportionate distribution of the Gross Settlement Amount, this factor does not indicate collusion or inappropriate self-interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

#### ii.     Presence of a "Clear Sailing Arrangement"

A settlement agreement contains a "clear sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Briseño*, 998 F.3d at 1023. But the mere presence of such an agreement is not "an independent basis for withholding settlement approval." *Id.* at 1027.

Here, the Settlement contains a clear sailing arrangement. *See Settlement* ¶ 6 ("Defendant will not object to Class Counsel's request for a total award of attorneys' fees of one-third of the Gross Settlement Amount."). However, because any funds not awarded to Class Counsel will go to the Class Members rather than Defendant, *see id.* ¶¶ 4–5, the other terms of the Settlement help offset the collusive concerns addressed in *Briseño*. Accordingly, although this factor weakly indicates collusion or inappropriate self-interest, that is not, standing alone, dispositive. *See Briseño*, 998 F.3d at 1027.

#### iii.     Presence of a Reversionary Clause

A reversionary clause is one that "returns unawarded fees to the defendant, rather than the class." *Briseño*, 998 F.3d at 1023. Here, there is no reversionary clause in the Settlement Agreement. Accordingly, this factor does not indicate collusion or inappropriate self-interest.

#### iv.     Briseño *Conclusion*

After considering each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest.

#### E.     Final Approval Conclusion

Having concluded that the *Hanlon* factors favor final approval and that the Settlement Agreement is appropriate under *Briseño*, the Court **GRANTS** Plaintiffs' motion for final approval of the Settlement Agreement.

### III.     Attorneys' Fees, Costs, and Enhancement Awards

Plaintiffs move for (1) $600,000 in attorneys' fees for Class Counsel, (2) reimbursement of $133,347.82 in litigation costs incurred by Class Counsel, (3) enhancement awards of $20,000 to each Plaintiff, (4) $19,000 in settlement administration costs, and (5) approval of an allocation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

of $40,000 for PAGA penalties, including payment of $30,000 to the LWDA.  *See Fees Mot.* 4:6–11, 16:4–26; *Final Approval Mot.* 1:23–28.   The Court addresses each request in turn.

> A.   <u>Attorneys' Fees</u>

>> i.   *Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs.  The court "must carefully assess" the reasonableness of the fee award.  *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the percentage-of-recovery method or the lodestar method.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).

>> ii.   *Discussion*

Under the percentage-of-recovery method, courts typically use 25% of the fund as a benchmark for a reasonable fee award.  *See In re Bluetooth Headset*, 654 F.3d at 942.  The percentage can vary, however, and courts have awarded more or less than 25% of the fund in attorneys' fees as they deemed appropriate.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20 and 30% of the common fund in attorneys' fees).

Here, Plaintiffs request that the Court approve a fee award of $600,000—i.e., 33% of the Gross Settlement Amount.  *Fees Mot.* 4:6–11.  Because Plaintiffs ask the Court to depart from the benchmark of 25%, the Court must evaluate each of the five factors set out in *Vizcaino*.  *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  "The mere fact that the defendant agrees to pay the fees 'does not detract from the need to carefully scrutinize the fee award.'"  *Zubia v. Shamrock Foods Co.*, No. CV 16-3128 AB (AGRx), 2017 WL 10541431, at *5 (C.D. Cal. Dec. 21, 2017) (quoting *Staton*, 327 F.3d at 964).  As such, the Court will analyze

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

Plaintiffs' request under the *Vizcaino* factors and cross-check the reasonableness of the award using the lodestar method.

### a.       *Percentage-of-the-Common-Fund Method*

When assessing the reasonableness of a fee award under the common fund theory, courts consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).

### 1.       *Results Achieved*

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046.  Here, Plaintiffs estimate that participating Class Members will receive an average of $442.08, and the maximum award will be approximately $1,692.33. *Lee Decl.* ¶ 13.   This provides significant and immediate monetary relief to the Class Members.  *See Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO (GJSx), 2017 WL 708766, at *10 (C.D. Cal. Feb. 16, 2017) (approving an average per-member recovery of $389.81 in a wage-and-hour case); *Freeze v. PVH Corp.*, No. CV 19-1694 PSG (Ex), 2021 WL 2953161, at *7–8 (C.D. Cal. Jan. 7, 2021) (finding that average per-member recovery of $99.66 and highest individual recovery of $495.26 weighed in favor of approving 33% fee).  Further, no Class Members objected to the settlement or opted out.  Accordingly, the Court finds that this result weighs in favor of an upward departure from the 25% benchmark.

### 2.       *Risk of Litigation*

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees.  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (explaining that "[r]isk is a relevant circumstance" in determining an attorney fee award in a common fund case).  As discussed above, the Court agrees that continued litigation would have been risky given Defendant's defenses and challenges to class certification.  Accordingly, this factor supports an upward departure from the benchmark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

3.   *Skill Required and Quality of Work*

The Court also considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. As discussed previously, Class Counsel conducted substantial investigation and discovery, filed a class certification motion, and participated in two mediations. *See Spivak Fees Decl.* ¶ 11. Plaintiffs assert that Class Counsel's knowledge and experience in litigating wage-and-hour class actions "was integral in evaluating the strengths and weaknesses of the case . . . and the reasonableness of the Settlement," particularly given the "caliber and experience of opposing counsel." *Fees Mot.* 11:15–12:13. The Court agrees that the skill displayed by Class Counsel in prosecuting the case and obtaining a favorable settlement supports an upward departure.

4.   *Contingent Nature and Plaintiffs' Financial Burden*

Class Counsel took this case "entirely on a contingency basis," while spending 1,359.49 hours and $133,166.02 litigating the case. *Fees Mot.* 10:11–24; *Spivak Fees Decl.* ¶¶ 11, 19–20 & Ex. H; *see also Nordrehaug Fees Decl.* ¶¶ 7–8, 11 & Ex. 2. Therefore, because Class Counsel faced the risk of walking away with nothing after investing substantial time and resources in this matter, the Court finds that this factor favors an upward departure from the benchmark.

5.   *Awards Made in Similar Cases*

The requested award of attorneys' fees of 33% of the Gross Settlement Amount is comparable to awards authorized in similar cases. *See Freeze*, 2021 WL 2953161, at *7–11 (approving 33% fee award in wage-and-hour case); *Brown v. CVS Pharmacy, Inc.*, No. CV15–7631 PSG (PJWx), 2017 WL 3494297, at *6–7 (C.D. Cal. Apr. 24, 2017) (finding 30% fee award reasonable in a wage-and-hour case); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–4149 MMM (SH), 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (approving 34% fee award in wage-and-hour case); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (finding 42% fee award reasonable in wage-and-hour case). Accordingly, similar cases establish that an upward departure from the benchmark is appropriate here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

6.    *Balancing the* Vizcaino *Factors*

Because all of the *Vizcaino* factors support an upward departure from the 25% benchmark, the Court finds that the request is reasonable under the percentage-of-the-common-fund method.  However, the Court will cross-check the reasonableness of the upward departure using the lodestar method.

b.    *Lodestar Method*

The lodestar method is a way for the Court to cross-check the reasonableness of a fee award.  To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work.  *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).  The court may raise or lower the lodestar based on several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 n.7 (9th Cir. 2002).

Class Counsel asserts that the current lodestar is $638,099.25, which is based on 1,359.49 hours spent on this case.  *See Spivak Fees Decl.* ¶¶ 19–20; *Nordrehaug Fees Decl.* ¶ 8.  In support of these figures, Class Counsel submitted timekeeping statements from the attorneys, paralegals, law clerk, and legal secretaries who worked on the case, *see Spivak Fees Decl.* Ex. H; *Nordrehaug Fees Decl.* Exs. 1–2, as follows:[3]

---

[3] The timekeeping statements did not identify the titles of all of the individuals who worked on the case, but Class Counsel provided the missing information, which is incorporated below, at the January 14 hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

| The Spivak Law Firm | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| David Spivak | Partner | 220.81 | $700 | $154,567.00 |
| Michelle Grimberg | Associate | 0.17 | $650 | $110.50 |
| Gregory Wilbur | Associate | 0.18 | $450 | $81.00 |
| Carl Kaplan | Associate | 204.76 | $350 | $71,666.00 |
| Breck Oyama | Paralegal | 232.73 | $300 | $69,819.00 |
| Lizzett Cortez | Paralegal | 129.15 | $250 | $32,287.50 |
| Maya Cheaitani | Associate | 0.25 | $250 | $62.50 |
| Nora Greer | Paralegal | 0.16 | $200 | $32.00 |
| Jessica Bencomo | Legal Secretary | 0.08 | $150 | $12.00 |
| Silvia Kirollos | Legal Secretary | 1.25 | $150 | $187.50 |
| **Blumenthal Nordrehaug Bhowmik De Blouw LLP** | | | | |
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| Norman Blumenthal | Partner | 19.00 | $795 | $15,105.00 |
| Kyle Nordrehaug | Partner | 45.50 | $750 | $34,125.00 |
| Aparajit Bhowmik | Partner | 52.50 | $725 | $38,062.50 |
| Nicholas De Blouw | Partner | 49.90 | $695 | $34,680.50 |
| Piya Mukherjee | Associate | 102.20 | $550 | $56,210.00 |
| Victoria Rivapalacio | Associate | 200.00 | $495 | $99,000.00 |
| Charlotte James | Associate | 5.75 | $475 | $2,731.25 |
| Ricardo Ehmann | Associate | 17.30 | $475 | $8,217.50 |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 20-117 PSG (AFMx) | | Date | January 18, 2022 |
|---|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | | |

| Scott Blumenthal | Associate | 21.60 | $325 | $7,020.00 |
|---|---|---|---|---|
| Fredrick J. Goldman | Paralegal | 26.60 | $275 | $7,315.00 |
| Heather Drosi | Paralegal | 0.20 | $250 | $50.00 |
| Karla Horne | Paralegal | 21.50 | $250 | $5,375.00 |
| Jackland Hom | Law Clerk | 7.90 | $175 | $1,382.50 |
| **Total** | | **1,359.49** | **N/A** | **$638,099.25** |

### 1.    Rates

When calculating the lodestar, the reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community." (internal quotations omitted)); *Viveros v. Donahue*, No. CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See, e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, No. CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

The Court turns to the *2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4–5 (C.D. Cal. Oct. 23, 2015). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). Courts have found that the Real Rate Report is "a much better reflection of true market

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The Real Rate Report provides that, in Los Angeles, partners litigating labor and employment matters have hourly rates ranging from $470 to $753, and associates have hourly rates ranging from $335 to $570. *See* Real Rate Report at 74. Here, Class Counsel charged hourly rates of $650 to $795 for partners and $325 to $650 for associates. *Spivak Fees Decl.* Ex. H; *Nordrehaug Fees Decl.* Exs. 1–2. Accordingly, the Court accepts the following rates as within the reasonable rate charged in the relevant community: Kyle Nordrehaug's rate of $750, Aparajit Bhowmik's rate of $725, David Spivak's rate of $700, Nicholas De Blouw's rate of $695, Piya Mukherjee's rate of $550, Victoria Rivapalacio's rate of $495, Charlotte James' and Ricardo Ehmann's rate of $475, Gregory Wilbur's rate of $450, Carl Kaplan's rate of $350, Scott Blumenthal's rate of $325, and Maya Cheaitani's rate of $250. However, Norman Blumenthal's requested rate of $795 appears higher than that of his counterparts in this community. Considering his law school graduation year of 1973 and his firm's extensive experience in labor and employment litigation, *see Nordrehaug Fees Decl.* ¶ 3 & Ex. 1, the Court adjusts Mr. Blumenthal's rate down to $750. Similarly, Michelle Grimberg's rate of $650 appears to exceed that of other associates litigating labor and employment matters in this community. Given Ms. Grimberg's 20 years of experience as an attorney, *Spivak Fees Decl.* Ex. H, the Court adjusts her rate down to $570.

Additionally, Class Counsel charged hourly rates of $170 to $300 for paralegals and a law clerk. *Spivak Fees Decl.* Ex. H; *Nordrehaug Fees Decl.* Ex. 2. Plaintiffs do not adequately detail the prevailing rate for paralegals or law clerks to support these rates, and the Real Rate Report does not provide information for paralegals or support staff. However, courts in this District have approved similar rates for litigation support staff, with one exception. *See, e.g.*, *SAS v. Sawabeh Info. Servs. Co.*, No. CV 11- 4147 MMM MANx, 2015 WL 12763541, at *22–23 (C.D. Cal. June 22, 2015) (approving hourly rate of $150 to $275 for litigation support staff); *Martinez v. Helzberg's Diamond Shops*, EDCV 20-1085 PSG (SHKx), Dkt. # 42 (slip op.), at *16 (C.D. Cal. Sept. 24, 2021) (approving $150 hourly rate for law clerk). Therefore, the Court approves the following rates as within the range charged in the relevant community: Fredrick Goldman's rate of $275; Lizzett Cortez's, Heather Drosi's, and Karla Horne's rate of $250; Nora Greer's rate of $200; and Jackland Hom's rate of $175. However, Breck Oyama's rate of $300 falls outside of the average range of rates for litigation support staff approved by courts in this District. Considering his 13 years of experience as a paralegal, *see Spivak Fees Decl.* Ex. H, the Court adjusts Mr. Oyama's rate down to $275.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

Finally, Class Counsel charged hourly rates of $150 for legal secretaries. *Spivak Fees Decl.* Ex. H. However, time spent on clerical or secretarial tasks is excluded in lodestar analyses, because it is considered part of a firm's overhead. *Browne v. Am. Honda Motor Co., Inc.*, No. CV 09–06750 MMM (DTBx), 2010 WL 9499073, at *8 (C.D. Cal. Oct. 5, 2010). Plaintiffs have not made a sufficient showing that the time billed by legal secretaries was spent on substantive case-related work that might be recoverable, as opposed to clerical work. *See Spivak Fees Decl.* Ex. H. Accordingly, the Court declines to award any fees based on the work of legal secretaries. *See Aarons v. BMW of N. Am., LLC*, No. CV 11–7667 PSG (CWx), 2014 WL 4090564, at *16 (C.D. Cal. Apr. 29, 2014) (declining to award fees for work done by administrative assistant absent a showing that such work was substantive and case-related).

### 2. *Hours*

An attorneys' fee award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, Class Counsel have spent 1,359.49 hours on this case. *See Spivak Fees Decl.* ¶¶ 19–20 & Ex. H; *Nordrehaug Fees Decl.* ¶ 8 & Ex. 2. As discussed at length previously, before reaching a Settlement Agreement, Class Counsel conducted extensive investigation and discovery, filed a motion for class certification, and engaged in arm's-length negotiations with Defendant before two different mediators. *See Spivak Fees Decl.* ¶ 11; *see generally* Dkt. # 56. Given the scope of this case and the stage to which it progressed before settling, the Court finds that the time expended by Class Counsel was reasonable, with one exception. The Spivak Law Firm's timekeeping statements indicate that on November 11, 2020, David Spivak spent 33 hours reviewing a stipulation to continue the class certification deadline. *Spivak Fees Decl.* Ex. H at 13. Class Counsel explained at the hearing that this time entry was an error. The Court accordingly reduces the time billed by Mr. Spivak on November 11, 2020 to 0.3 hours, which the Court finds more appropriate for the work performed that day.

### 3. *Lodestar Cross-Check*

The Court recalculates Class Counsel's lodestar as follows:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

| The Spivak Law Firm | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Adjusted Hours** | **Adjusted Rate** | **Fees** |
| David Spivak | Partner | 188.11 | $700 | $131,677.00 |
| Michelle Grimberg | Associate | 0.17 | $570 | $96.90 |
| Gregory Wilbur | Associate | 0.18 | $450 | $81.00 |
| Carl Kaplan | Associate | 204.76 | $350 | $71,666.00 |
| Breck Oyama | Paralegal | 232.73 | $275 | $64,000.75 |
| Lizzett Cortez | Paralegal | 129.15 | $250 | $32,287.50 |
| Maya Cheaitani | Associate | 0.25 | $250 | $62.50 |
| Nora Greer | Paralegal | 0.16 | $200 | $32.00 |

| Blumenthal Nordrehaug Bhowmik De Blouw LLP | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Adjusted Hours** | **Adjusted Rate** | **Fees** |
| Norman Blumenthal | Partner | 19.00 | $750 | $14,250.00 |
| Kyle Nordrehaug | Partner | 45.50 | $750 | $34,125.00 |
| Aparajit Bhowmik | Partner | 52.50 | $725 | $38,062.50 |
| Nicholas De Blouw | Partner | 49.90 | $695 | $34,680.50 |
| Piya Mukherjee | Associate | 102.20 | $550 | $56,210.00 |
| Victoria Rivapalacio | Associate | 200.00 | $495 | $99,000.00 |
| Charlotte James | Associate | 5.75 | $475 | $2,731.25 |
| Ricardo Ehmann | Associate | 17.30 | $475 | $8,217.50 |
| Scott Blumenthal | Associate | 21.60 | $325 | $7,020.00 |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 20-117 PSG (AFMx) | | Date | January 18, 2022 |
|---|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | | |

| | | | | |
|---|---|---|---|---|
| Fredrick J. Goldman | Paralegal | 26.60 | $275 | $7,315.00 |
| Heather Drosi | Paralegal | 0.20 | $250 | $50.00 |
| Karla Horne | Paralegal | 21.50 | $250 | $5,375.00 |
| Jackland Hom | Law Clerk | 7.90 | $175 | $1,382.50 |
| **Total** | | **1,325.46** | **N/A** | **$608,322.90** |

Class Counsel's adjusted lodestar of $608,322.90 is slightly more than the requested award of $600,000—the requested award represents the lodestar with a multiplier of 0.99.

A multiplier of less than 1.0 supports the reasonableness of the requested award. *Tamimi v. SGS N. Am. Inc.*, CV 19-965 PSG (KSx) (slip op.), at *19 (C.D. Cal. Sept. 1, 2021) (approving a 33% fee award with a 0.95 multiplier in a wage-and-hour class action); *Taylor v. TIC–The Indus. Co.*, No. EDCV 16-186 VAP (SPx), 2018 WL 6131198, at *10 (C.D. Cal. Aug. 1, 2018) (finding a 0.5 multiplier reasonable); *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186 VAP (SPx), 2017 WL 10434013, at *8 (C.D. Cal. Oct. 12, 2017) (finding a 0.8 multiplier reasonable); *cf. Vizcaino*, 290 F.3d at 1051 n.6 (finding that a "bare majority" of multipliers in common fund cases fall in the 1.5 to 3.0 range); *McKenzie v. Fed. Express Corp.*, No. CV 10-2420 GAF (PLAx), 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012) (approving a 3.2 multiplier).

Accordingly, the Court finds that Class Counsel's requested attorneys' fees are reasonable and supported by both the percentage-of-the-common-fund and lodestar methods. Thus, the Courts **GRANTS** Plaintiffs' motion for $600,000 in attorneys' fees.

B.     Litigation Costs

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1048.

Here, Class Counsel requests reimbursement of $133,347.82 in costs and expenses. *See Fees Mot.* 15:11–26. This includes expenses that are typically charged to fee-paying clients, including filing fees, expert witness fees, mediation fees, deposition expenses, legal research

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|----------|------------------------|------|------------------|

| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. |
|-------|-------------------------------------------------------|

fees, and copying and postage charges. *See id.* 15:15–18; *Spivak Fees Decl.* ¶ 21 & Ex. I; *Nordrehaug Fees Decl.* ¶ 11 & Ex. 2. The Court has reviewed the accounting records and is satisfied that the costs are reasonable. Therefore, the Court **GRANTS** Plaintiffs' request for costs in the amount of $133,347.82.

> C.  Enhancement Awards

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). When assessing requests for incentive awards, courts consider five principal factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Further, courts typically examine the propriety of an incentive award by comparing it to the total amount other class members will receive. *See Staton*, 327 F.3d at 975.

Here, Plaintiffs each request an enhancement award of $20,000. *Fees Mot.* 16:20–26. Each award represents 1.1% of the Gross Settlement Amount, for a total of 2.2%.

Plaintiffs argue that the requested awards are appropriate for several reasons, including the time and effort they expended by helping Class Counsel develop and investigate the claims, gathering witnesses for interviews, giving deposition testimony, and participating in two days of mediation. *Fees Mot.* 18:12–22; *see also Declaration of Eric Ayala*, Dkt. # 105-3 ("*Ayala Decl.*"), ¶ 8; *Declaration of Adrian Aviles*, Dkt. # 105-4 ("*Aviles Decl.*"), ¶¶ 6, 10–12. Ayala spent more than 122 hours, and Aviles estimates that he spent roughly 90 to 100 hours, contributing to the case. *Ayala Decl.* ¶ 8 & Ex. A; *Aviles Decl.* ¶ 12. Class Counsel assert that they "depended heavily on Plaintiffs' assistance." *Spivak Fees Decl.* ¶ 23(c). Further, Plaintiffs assumed the risk of being subject to Defendant's attorneys' fees and costs if they were unsuccessful, and, unlike other Class Members, provided Defendant with a general release. *See Fees Mot.* 16:27–17:9, 18:23–19:25. Plaintiffs also assert that they risk "worsened career prospects" given their participation in this case against their employer. *See id.* 21:26–22:11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

Finally, Plaintiffs note that their Individual Settlement Awards will be lower than the average
per-member recovery of $442.08 and significantly lower than the highest Individual Settlement
Award of $1,692.33. *Id.* 20:2–15; *see also Lee Decl.* ¶ 13 (indicating estimated Individual
Settlement Awards of $382.79 for Ayala and $252.85 for Aviles).

The Court agrees that the requested enhancement awards of $20,000 are appropriate here
for the reasons described above and further elaborated upon at the hearing. In particular, the
Court finds significant that—unlike other Class Members—Plaintiffs each signed a general
release, risked being subject to Defendant's attorneys' fees and costs, and may have jeopardized
future employment prospects. Furthermore, it is apparent that Plaintiffs extensively supported
Class Counsel's work on behalf of the Class throughout the litigation. Thus, the Court is
satisfied that Plaintiffs have justified the relative size of their requested enhancement awards
compared to the Gross Settlement Amount and the average Individual Settlement Award. *See
Edwards v. Chartwell Services, Inc.*, No. 16-CV-9187-PSG (KSx), 2018 WL 10455206, at *1–2,
*8 (C.D. Cal. Aug. 27, 2018) (approving a $10,000 enhancement award, which was over 25
times the average per-member recovery and represented 1.25% of the gross settlement fund,
when plaintiff spent approximately 55 hours assisting with the case and risked future job
prospects); *Palmer v. Pier 1 Imports*, No.: 8:16-cv-01120-JLS-DFMx, 2018 WL 8367495, at *6
(C.D. Cal. July 23, 2018) (approving award representing 3.5% of gross settlement fund when
plaintiff spent 20 hours helping with the case and faced employment-related risks); *Downey
Surgical Clinic, Inc. v. Ingenix, Inc.*, CV 09-5457 PSG (JCx), Dkt. # 250 (slip op.), at *13 (C.D.
Cal. May 16, 2016) (approving $20,000 enhancement award for each of two plaintiffs).

Accordingly, the Court **GRANTS** Plaintiffs' request for enhancement awards in the
amount of $20,000 per Plaintiff, for a total of $40,000.

D.    <u>Settlement Administration Costs</u>

Plaintiffs propose to pay Phoenix $19,000 for settlement administration costs. *Fees Mot.*
16:4–9; *Spivak Fees Decl.* ¶ 24; *Lee Decl.* ¶ 16 & Ex. B. The Court continues to find this
request reasonable given the costs for mailed notice and distribution of settlement funds to a
class of 2,100 individuals. *See Lowe v. Popcornopolis LLC*, No. CV 19-6984 PSG (RAOx),
2020 WL 5991509, at *9 (C.D. Cal. July 8, 2020) (approving $24,000 in administration costs for
191 claims); *Holt v. Parsec, Inc.*, No. CV 10-9540-DMG (PJWx), 2012 WL 12882712, at *1–3
(C.D. Cal. Mar. 5, 2012) (approving an estimated $30,000 administration fee for approximately
1,800 class members); *Ching v. Siemens Indus., Inc.*, No. 11–cv–04838–MEJ, 2014 WL
2926210, at *2 (N.D. Cal. June 27, 2014) (approving estimated administration costs of $15,000
for 114 class members).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
|---|---|---|---|
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

E.    PAGA Penalties

The parties have agreed to PAGA penalties of $40,000.  *See Settlement* ¶ 4(C)(6).  Of this amount, 75% ($30,000) will go to the LWDA and 25% ($10,000) will be distributed to the PAGA Settlement Class Members on a pro rata basis.  *See id.*; *see also* Cal. Lab. Code § 2699(i) (providing that 75% of civil penalties recovered by aggrieved employees should be distributed to the LWDA).  This allocation represents roughly 2.2% of the Gross Settlement Amount, and the portion to be distributed to the LWDA represents approximately 1.7% of the Gross Settlement Amount, which falls within the range of possible approval of PAGA penalties.  *See, e.g.*, *Feao v. UFP Riverside, LLC*, No. CV 17-3080 PSG (JPRx), 2019 WL 12340202, at *2, *10 (C.D. Cal. Oct. 22, 2019) (approving PAGA payment of $40,000, or 4% of gross settlement amount, to the LWDA); *Contreras v. Worldwide Flight Servs., Inc.*, No. CV 18-6036 PSG (SSx), 2020 WL 2083017, at *10 (C.D. Cal. Apr. 1, 2020) (approving payment of $15,000, or 2.1% of gross settlement amount, as PAGA penalty to the LWDA); *Freeze*, 2021 WL 2953161, at *2, *7 (approving PAGA payment of $20,000, or 1.5% of gross settlement amount, to the LWDA).  Therefore, the Court finds this settlement of the claims for penalties under PAGA reasonable and **GRANTS** Plaintiffs' request to approve the PAGA payments.

IV.    Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for final approval of the class action settlement and **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and class representative service awards.  Accordingly, it is **HEREBY ORDERED AS FOLLOWS**:

• The Court approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate.  The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement.

• Class Counsel is awarded $600,000 in attorneys' fees and $133,347.82 in costs. Additionally, Plaintiffs are each awarded a $20,000 enhancement award, for a total of $40,000.  The Court finds that these amounts are warranted and reasonable for the reasons stated in this order.

• The Court approves PAGA penalties of $40,000, of which $30,000 will be paid to the LWDA and $10,000 will be distributed to PAGA Settlement Class Members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 20-117 PSG (AFMx) | Date | January 18, 2022 |
| --- | --- | --- | --- |
| Title | Eric Ayala v. UPS Supply Chain Solutions, Inc. et al. | | |

- The Court approves payment in the amount of $19,000 to Phoenix for settlement administration costs.

- Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Class Members for all matters relating to the litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

This order closes the case.

**IT IS SO ORDERED.**